UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  09-cv-61288-Huck/O'Sullivan

PHYLLIS SAWYER, individually and on
behalf of all others similarly situated,

        Plaintiff,

vs.

TRANSAMERICA LIFE INSURANCE
COMPANY,

        Defendant.
_____/

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

      Before the Court are cross-motions for summary judgment in an insurance coverage dispute.  The Court concludes that the policy in question plainly excludes the coverage that the Plaintiff seeks and that there are no statutory, regulatory, or public policy requirements that mandate coverage of the Plaintiff's claims.  Accordingly, the Court enters summary judgment in favor of the Defendant and against the Plaintiff.

      **I.**      **Introduction**

      In this case the Plaintiff asks the Court to do something extraordinary:  unrefuted evidence indicates that the Plaintiff deliberately selected an insurance policy that specifically does not cover expenses incurred in an assisted living facility, and the parties agree that the plain terms of the policy preclude the coverage that the Plaintiff seeks.  To overcome these generally dispositive facts, the Plaintiff argues that the policy in question is illegal, contrary to public policy, or that it "arguably" contains an ambiguous term that the Court should construe against the Defendant in favor of coverage.

      Although such arguments are routine in insurance coverage disputes, Florida law demands that courts read insurance contracts in a manner that gives effect to the parties' intentions.  Courts applying Florida law may only conclude that an insurance policy is ambiguous after making a reasonable effort to clarify the alleged ambiguity in the policy.  Only then, if an ambiguity remains, may the court construe the policy against the insurer.  Further, courts should not casually conclude that an insurance policy, in whole or in part, is unenforceable because it is contrary to law or public policy.  As Florida courts have long

1

held, a court "should not strike down a contract, or a portion of a contract, on the basis of public policy grounds except in very limited circumstances." *Fla. Windstorm Underwriting v. Gajwani*, 934 So. 2d 501, 506-507 (Fla. 3d DCA 2005) citing *Bituminous Cas. Corp. v. Williams*, 17 So. 2d 98, 101-102 (Fla. 1944) ("Courts, therefore, should be guided by the rule of extreme caution when called upon to declare transactions void as contrary to public policy and should refuse to strike down contracts involving private relationships on this ground, unless it be made clearly to appear that there has been some great prejudice to the dominant public interest sufficient to overthrow the fundamental public policy of the right to freedom of contract between parties sui juris.").

The policy in question unambiguously excludes the coverage that the Plaintiff now seeks, and nothing in Florida law mandates defeasance of all or part of the policy. Accordingly, through this order, the Court enforces the parties' expressed agreement and concludes that the Defendant is not required to reimburse the Plaintiff for any of the services received in an assisted living facility.

## II.     Factual and Procedural Background

### A.     The Plaintiff's Application for the Policy

On November 21, 1998, the Plaintiff applied for a home care only type of insurance policy from Transamerica Occidental Life Insurance Company, which later became Transamerica Life Insurance Company. When the Plaintiff applied for the policy, she was 75 years old, in good health, and independently living at her home.

The policy application gave the Plaintiff the option of selecting among three types of insurance policy plans: (1) an integrated facility and home care insurance policy, (2) a facility only insurance policy, or (3) a home care only insurance policy. The integrated policy is the most expensive and provides coverage either in a nursing or assisted living facility or at home. The policy is "integrated" because it provides coverage whether the insured is in a facility or at home. The facility only policy is the second-most expensive policy and provides coverage either in a nursing home or in an assisted living facility. Finally, the home care only policy is the least expensive policy and provides coverage in the insured's own home.

In her application the Plaintiff selected the home care only insurance policy. The application required the Plaintiff to sign her initials in a box indicating that she intended to select a home care only insurance policy; next to her initials, the Plaintiff was required to

write her reason for selecting the home care only policy. By initialing and identifying her reason for selecting the home care only policy, the Plaintiff acknowledged the following:

> **Home Care Only Statement – Complete if applying for Home Care Only coverage (No Facility coverage)**  I am applying for Home Care Only and understand this coverage is designed to provide benefits for home health care services and does not provide coverage for confinement in any nursing home or assisted living facility.  Further, below is the reason, in my own handwriting, why I have elected Home Care Only insurance.

D.E. #21-1 (emphasis in original).[1]  The cover page of the policy includes a similar (though less specific) warning:

> **NOTICE TO YOU, THE BUYER:  This policy may not cover all of the costs associated with long term care incurred by you during the period of coverage.  We advise you to review carefully all policy limitations and to periodically review this policy in relation to the changes in the cost of long term care.**

Policy at 1 (emphasis in original).  As her handwritten reason for selecting the home care only policy, the Plaintiff stated "[b]ased upon my financial situation."[2]  Application at 25.

In accordance with the Plaintiff's application, the Defendant issued the Plaintiff a home care only policy effective December 12, 1998, and gave her a 30-day window in which she could cancel the policy for any reason.

### B.     The Policy

The Plaintiff's policy provides several types of coverage:  (1) home care only services coverages, (2) home modification coverage, (3) therapeutic device coverage, (4) caregiver training coverage, (5) medical alert system coverage, and (6) a care coordination benefit.

This litigation concerns the home care only services coverage.  Under that coverage, the Plaintiff may be reimbursed for four kinds of services:  (1) home care services, (2) home health care services, (3) hospice care services, and (4) respite care services.  With the exception of the respite care services, all of the services provided under the must be provided

---

[1]  The policy and the Plaintiff's application were filed as a composite exhibit at D.E. #21-1.  The Court will use "policy" or "application" to refer to these two portions of D.E. #21-1.

[2]  The Plaintiff's handwritten reason for selecting the home care only policy is cut off in the copy of the application that was provided to the Court.

in the insured's "Home."[3]  The policy defines "Home" as "any place where [the insured] reside[s] **other than** a nursing facility, Alzheimer's facility, Hospital, hospice facility, assisted living facility, congregate care or any other similar residential care facility."  Policy at 6 (emphasis in original).

The policy is governed by the laws of Florida and specifies that "[a]ny provision of th[e] policy which, on [the insured's] policy effective date, is in conflict with the laws of the state where this policy is issued is hereby amended to conform to the minimum requirements of such laws."  Policy at 16.

The Department of Insurance's Bureau of Life & Health Forms & Rates reviewed the Defendant's policy forms before the Defendant issued any policies based on those forms.  D.E. #21-7.  On February 7, 1997, that agency placed a stamp upon the Defendant's letter transmitting the forms indicating that the forms were "Approved for Compliance with Florida Law Only."  *Id.*  That same day, the agency issued a letter notifying the Defendant that the "rates have been **approved** as filed.  Please be advised that this letter is approval of the rates portion only.  Our Health Forms Section will notify you when they have completed their review of the forms portion."  D.E. #21-8 (emphasis in original).[4]

---

[3] "Home Care Services" are "services that are rendered by skilled or unskilled persons who work under the supervision of a Home Care Agency or a Florida-licensed nurse registry.  *These services are provided in [the insured's] Home* and include . . . ."  Policy at 8 (emphasis supplied).  "Home Health Care Services" are "a program of professional, para-professional or skilled care provided through a Home Care Agency or through a Florida-licensed nurse registry to an individual *at Home*."  *Id.* (emphasis supplied).  The policy specifies that "Hospice Care *must be provided in [the insured's] Home* by a Home Care Agency, a community hospice organization or a person who is professional or appropriately trained to provide Hospice Care Services."  *Id.* at 9 (emphasis supplied).  On the other hand, "Respite Care Services" may be "provided in the Home or Assisted Living Facility while a family member or other caregiver who normally provides long-term care services on a regular basis takes short-term leave . . . ."  *Id.*  "Home Care Agency" is "an agency or organization which provides care and services *in your Home*" and meets certain criteria.  *Id.* (emphasis supplied).

[4] Based on the correspondence received from the Department, it is unclear whether the Department approved only the rates or both the rates and form of the proposed insurance agreement.  Because the Court agrees with the Defendant for other reasons, the Court does not further address whether the Department's approval of the policy is dispositive or entitled to deference.

### C. The Plaintiff's Claim

According to the complaint, the Plaintiff lived at home independently when she purchased the policy in 1998. In January 2007, the Plaintiff allegedly "suffered a debilitating medical condition which required her to be hospitalized," and after her hospitalization, "she returned to her home but required assistance with her activities of daily living." The Plaintiff did not file any claims under the policy for services that were provided to her while residing at her home.

In April 2007, the Plaintiff began living in an assisted living facility—Summerville at Deer Creek—and lived there until October 2008, when she moved to another assisted living facility—the Renaissance in Deerfield Beach, Florida.

In the complaint, the Plaintiff alleges that she made a claim for benefits under the Defendant's policy in April 2009. The Defendant, however, claims that this reference is to a phone call from the Plaintiff's daughter and no written claim was ever filed with the Defendant, even though the Defendant provided the Plaintiff with a claims form in March 2009.

In a letter dated April 2, 2009, the Defendant denied the Plaintiff's phoned-in claim based on the definition of "Home" under the policy. D.E. #21-9 ("Home is defined on page 6 of the policy in pertinent part as, 'any place where you reside other than a assisted living facility.' Since [the Plaintiff] resides in an assisted living facility, these benefits would not be available under her policy.").

The Plaintiff's complaint, filed August 28, 2009, is premised on the Defendant's denial of the Plaintiff's claim and the Plaintiff's contention that Florida law deems assisted living facilities "Homes" and, because the policy incorporates Florida law, coverage is required under the policy. The complaint seeks damages for breach of contract (Count I) and declaratory relief (Count II).

### D. The Cross-Motions for Summary Judgment

#### 1. The Plaintiff's Motion for Summary Judgment

In support of her motion for summary judgment the Plaintiff argues that insurance policies must be construed liberally in favor of insureds and that policies must be consistent with Florida law; where a policy runs afoul of the law, the policy must be construed in a manner that is consistent with state law, even if it means conforming the policy to the minimum requirements of Florida law. According to the Plaintiff, Florida's "public policy" is that assisted living facilities are an important part of long-term care in the state, and that

5

the policy in question undermines public policy by precluding recovery for costs incurred in assisted living facilities.

The Plaintiff also argues that Florida law prescribes a definition for "Home Health Services," and that term can be "no more restrictive" than "medical and non-medical services provided to ill, disabled, or inform persons in their residences." According to the Plaintiff, Florida law does not prohibit home health care from being provided at assisted living facilities; the only place in which such services may not be provided is in the "acute care unit of a hospital." To further support this, the Plaintiff relies on several statutes and administrative regulations, both from within and outside of the Insurance Code.

The Plaintiff also argues that the policy is ambiguous and should be construed favor of providing coverage. Specifically, the Plaintiff argues that, under the Policy, a provider must be a "licensed Home Care Agency" that provides "Home Health Care Services" and/or "Home Care Services." Because the term "agency" is not defined in the policy, the Plaintiff claims that assisted living facilities are agencies under a plain-meaning approach because assisted living facilities "perform on behalf of and supply services to their residents" and otherwise meet the policy's requirements of service providers.

### 2. The Defendant's Motion for Summary Judgment

The Defendant argues that it is entitled to summary judgment in its favor because the policy unambiguously excludes the coverage that the Plaintiff seeks. According to the Defendant, the policy only provides for coverage at home and, therefore, the policy does not require the Defendant to reimburse the Plaintiff for any costs that she incurred while at an assisted living facility. Further, the Defendant argues that the Plaintiff's alleged ambiguity in the term "Home Care Agency" is manufactured; the Defendant argues that the term, as defined, plainly precludes any interpretation that an assisted living facility is an agency. In addition, the Defendant claims that the Plaintiff failed to file a claim under the policy because a telephone call from the Plaintiff's daughter does not satisfy the policy's notice requirement. Finally, the Defendant argues that the statutes and regulations on which the Plaintiff relies either do not apply or do not support the Plaintiff's arguments.

### III.   Standard of Review

The Court and parties agree that this case should be resolved through summary judgment because the record indicates that there are no genuine issues of material fact, and the undisputed facts, applied to the relevant law, entitle one party to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In Florida, the interpretation of insurance contracts is a question of law. *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000). Insurance contracts are construed according to their plain meaning. *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citations omitted); *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2003). To the extent there is an ambiguity in the insurance contract, courts should construe the ambiguity in favor of coverage. *James River*, 540 F.3d at 1274. An ambiguity exists if there are two possible interpretations to the insurance contract-one providing coverage and the other excluding coverage. *Id.* But the ambiguity in the contract must be real, and courts should not rewrite the contracts or add meaning that is not present. *Id.*

### IV. Analysis

The Court concludes that (1) the policy is not ambiguous, (2) insurance policies generally must only comply with statutes and regulations within the Insurance Code, (3) the Insurance Code-related statues and regulations on which the Plaintiff relies do not require coverage of the Plaintiff's claims, and (4) Florida's public policy does not require that insurers extend coverage offered under a home care only policy to insureds residing in assisted living facilities. Based on those conclusions, the Court grants summary judgment in favor of the Defendant and against the Plaintiff.

#### A. Ambiguity in the Policy

Under the policy in question, the Defendant is required to reimburse the insured for any services that the insured receives through a "Home Care Agency or a Florida-licensed nurse registry." A "Home Care Agency" is "an agency or organization which provides care and services in [the insured's] Home" and meets six criteria. Policy at 8. The Plaintiff argues that since the policy does not define "Agency," the Court should resort to the dictionary definition of the term which is broad enough to encompass assisted living facilities. The Plaintiff further argues that, under Florida law, assisted living facilities must meet or exceed the six criteria for Home Care Agencies identified in the policy.[5] Therefore, the Plaintiff concludes that an assisted living facility is a "Home Care Agency."

---

[5] Under the policy, a "Home Care Agency" must (1) be licensed where required, (2) provide "Home Health Care Services and/or Home Care Services," (3) be supervised by a Registered Professional Nurse or a licensed social worker where required, (4) have employees who have appropriate specialized training, (5) keep plan of care records and

7

The policy is not ambiguous. In fact, the Court would be hard-pressed to identify ways in which the insurer could clarify that the policy does not cover services rendered in assisted living facilities. The policy's definition of Home Care Agency unambiguously limits the term to an agency or organization that provides services in the insured's Home. Home, as noted above, is a defined term that expressly excludes, among other places, assisted living facilities. Elsewhere in the policy, where the Defendant intended to cover expenses incurred in assisted living facilities, the Defendant's policy says so unambiguously. For example, under certain circumstances, the Defendant covers "Respite Care Services" which are "provided in the Home or in a Nursing or Assisted Living Facility while a family member or other caregiver who normally provides long-term care services" takes a temporary leave. Policy at 9.

In short, the policy leaves no room for doubt that a "Home Care Agency" is not an assisted living facility. Indeed, at the time of the policy's execution, the Plaintiff had no doubt about the scope of intended coverage: the Plaintiff clearly stated that she was selecting the least expensive policy, and that the policy cost less than the other options precisely because it precluded coverage anywhere except in her home. The Plaintiff's suggested ambiguity is artificial and illusory. Such "ambiguities" are not sufficient under Florida law to compel a court to read a policy against an insurer.

### B.      Incorporation of Statutes and Regulations

In Florida, all insurance policies must comply with the statutory and regulatory frameworks surrounding insurance. One of the points of contention in this case is whether an insurance policy must be reconciled with statutes and regulations that are not within the Insurance Code. The Court concludes that the policy in question must only comply with the statutes and regulations within the Insurance Code. The Plaintiff has not identified a statute or regulation within the Insurance Code that requires the insurer to cover the expenses that the Plaintiff incurred in her assisted living facilities.

#### 1.      *The Non-Insurance Code Statutes and Regulations*

The Florida Insurance Code is comprised of Chapters 624-632, 634-636, 641-642, 648, and 651 of the Florida Statutes. Fla. Stat. § 624.01. Section 627.418(1) of the Florida

---

physician's orders for all patients, and (6) keep clinical records for all patients if providing "Home Health Care Services." Policy at 8-9.

8

Statutes codifies the principle that insurance policies that are inconsistent with the Insurance Code must be harmonized with the Code. Under that statute,

> [a]ny insurance policy . . . otherwise valid which contains any condition or provision not in compliance with the requirements of *this code* shall not be thereby rendered invalid, except as provided in s. 627.415, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with *this code*.

Fla. Stat. § 627.418(1) (emphasis supplied). The plain language of the statute indicates that only the Insurance Code is incorporated into insurance policies.

In this case the Plaintiff argues that the policy must be harmonized with several statutes that are outside of the Insurance Code. In particular, the Plaintiff argues that the Court should conclude that, under Chapters 400 and 429 of the Florida Statutes and their related regulations in Chapters 58A-2 and 58A-5 of the Florida Administrative Code, the policy's definition of "Home" must include assisted living facilities.

The Plaintiff cites several cases to advance the proposition that insurance policies may be modified if inconsistent with statutes or regulations outside of the Insurance Code, but each of those cases is distinguishable. *Citizens Ins. Co. v. Barnes*, 124 So. 722 (Fla. 1929) is distinguishable because it predates the adoption of the Insurance Code, including § 627.418(1). *Auto-Owners Ins. Co. v. DeJohn*, 640 So. 2d 158, 161 (Fla. 5th DCA 1994) is distinguishable because the policy in *DeJohn* conflicted with a statute within the Insurance Code, specifically the uninsured motorists law. The decision in *Weldon v. All Am. Life Ins. Co.*, 605 So. 2d 911, 914-15 (Fla. 2d DCA 1992) was based on an ambiguity in the policy, not on the reformation of the policy due to a requirement of a non-Insurance Code statute or regulation. *Canal Ins. Co. v. Continental Cas. Co.*, 489 So. 2d 136 (Fla. 2d DCA 1986) required coverage based on a regulation outside of the Insurance Code. However, the non-Insurance Code regulation concerned insurance requirements for carriers operating under Public Service Commission certificates. *Grant v. State Farm & Cas. Co.*, 638 So. 2d 936 (Fla. 1994) and *Std. Marine Ins. Co. v. Allyn*, 333 So. 2d 497 (Fla. 1st DCA 1976) are distinguishable because they involve the application of the Financial Responsibility Act to automobile accident insurance policies. The Financial Responsibility Act, unlike the non-Insurance Code provisions cited by the Plaintiff, largely concerned insurance requirements for motor vehicle owners in Florida.

The better view is to give the words in § 627.418(1) their plain meaning. If insurance provisions must be harmonized with non-Insurance Code statutes, then "this code" as used in § 627.418(1) means something other than what it plainly says.

2.  *The Statutes and Regulations Within the Insurance Code*

The Plaintiff cites several statutes, including Fla. Stat. §§ 627.9402, 627.9404, and 627.94071, all part of the Florida Long Term Care Insurance Act, to advance her argument that the Defendant must reimburse the Plaintiff for the cost of services received while in an assisted living facility. Section 627.9402 generally states the purpose of the Long Term Care Insurance Act, and does not conflict with the terms of the policy in question. Section 627.9404 defines terms in the Long Term Care Insurance Act and does not undermine the policy issued by the Defendant. Finally, § 627.94071 sets minimum standards for long-term care insurance policies. That section identifies ten ways in which an insurer may not limit coverage under a long-term care policy. Notably, § 627.94071 does not specify that home care only policies are unlawful or that the definition of "Home" may not exclude assisted living facilities. Section 627.94071 demonstrates that Florida's Legislature knew how to place limits on the type of policies that insurers could offer in Florida. The fact that the legislature did not forbid policies with limitations such as those in the policy in question further supports the Defendant's argument that the policy's limitations do not violate Florida law.

The Plaintiff also relies on a regulation promulgated pursuant to various chapters of the Insurance Code, including Chapter 627. Specifically, the Plaintiff argues that Fla. Admin. Code § 69B-157.103(5) prescribes that the definition of "Home health services" in long-term care insurance policies "shall have [a meaning] no more restrictive" than "medical and non-medical services provided to ill, disabled, or infirm persons in their residences." As the argument goes, since the Plaintiff's residence is an assisted living facility, § 69B-157.103(5) proscribes a definition of home health services that precludes recovery for services provided in the assisted living facility. But there are a few problems with this argument.

First, that regulation only applies to policies issued on or after March 1, 2003. The Plaintiff's policy was issued in 1998. The regulation applicable to policies issued before March 1, 2003, contains no such definition of home health services. *See* Fla. Admin. Code § 69B-157.003. To overcome this problem, the Plaintiff invokes a recent decision of the Third District Court of Appeal in which that court held that a statutory change that forbade a

10

particular policy provision was incorporated into the policy upon each renewal. *Bell Care Nurses Registry, Inc. v. Continental Cas. Co.*, 25 So. 3d 13, 15 (Fla. 3d DCA 2009). Unlike the statutory change at issue in *Bell Care*, however, § 69B-157.003 does not render unlawful any aspect of the Plaintiff's policy. Stated differently, even if § 69B-157.003 were incorporated into the policy, the Defendant would not be required to reimburse the Plaintiff for expenses incurred while in an assisted living facility.

Second, Florida law does not require insurers to treat assisted living facilities and ordinary homes in the same manner. Under Florida law, the term "assisted living facility" carries a special meaning. Florida law regulates assisted living facilities (an entire chapter of Florida's Administrative Code, Chapter 58A-5, is set aside for this purpose) and requires that assisted living facilities provide certain services that would not be available in ordinary residences. *See* Fla. Admin. Code § 58A-5.0182. For example, assisted living facilities must "monitor the quantity and quality of resident diets," designate staff to observe the wellbeing of residents and the residents' "general health, safety, and physical and emotional wellbeing," maintain an awareness of the residents' whereabouts, liaise with health care professionals and family members, and maintain a written record of the resident's medical events. Fla. Admin. Code § 58A-5.0182(1)(a)-(e). Further, an assisted living facility is required to organize social activities and transport residents to medical appointments. Fla. Admin. Code § 58A-5.0182(2)-(3). This gives weight to the argument that "assisted living facility" and "residence" are not the same thing.

Further evidence that "residence" and "assisted living facility" are not interchangeable terms under Florida law comes from within the very regulation that the Plaintiff cites. That subsection reads as follows:

> (5)   "Home health services" means medical and non-medical services provided to ill, disabled, or infirm persons in their residences. Such services *may include* homemaker services, assistance with activities of daily living, and respite care services.

Fla. Admin. Code § 69B-157.103(5) (emphasis supplied). In contrast, assisted living facilities are *required* to provide assistance with activities of daily living:

> (4)   ACTIVITIES OF DAILY LIVING. Facilities *shall offer* supervision of or assistance with activities of daily living as needed by each resident. Residents shall be encouraged to be as independent as possible in performing [activities of daily living].

Fla. Admin. Code § 58A-5.0182(4) (emphasis supplied). Therefore, under Fla. Admin. Code § 69B-157.103(5), an insurer could define home health services to exclude assistance with activities of daily living which would not be possible if "residence," as used in that subsection, included assisted living facilities where assistance with activities of daily living is a required service.

Third, Florida regulations related to long-term care policies allow insurers to offer different policies depending on where the insured is receiving care. For instance, Fla. Admin. Code §§ 69B-157.103(17)(b) and 69O-157.03(17)(b) contemplate that an insurer would offer forms for "institutional long-term care benefits only, non-institutional long-term care benefits only, or comprehensive long-term care benefits." Indeed, in this case, the Defendant offered the Plaintiff three types of insurance: facility only insurance, home care only insurance, and integrated facility and home care insurance.

In sum, the Plaintiff has not identified any provision of Florida law that applies to the policy in question and contradicts the policy's terms such that the policy must be reconciled with the statutes or regulation.

### C. Public Policy

In Florida, "courts may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties'" unless the parties' agreement is contrary to public policy. *Taurus*, 913 So. 2d at 532 (citations omitted); *Petrulli v. Castellano*, 412 So. 2d 432, 433 (Fla. 4th DCA 1982).

The Plaintiff argues, based on Fla. Stat. § 429.01, that Florida's public policy is to promote the availability of care for elderly persons in desirable assisted living facilities, and that the insurance policy issued by the Defendant runs contrary to Florida's public policy because it prevents the Plaintiff from receiving reimbursement for services rendered in an assisted living facility. That statute reads as follows:

> The purpose of this act is to promote the availability of appropriate services for elderly persons and adults with disabilities in the least restrictive and most homelike environment, to encourage the development of facilities that promote the dignity, individuality, privacy, and decisionmaking ability of such persons, to provide for the health, safety, and welfare of residents of assisted living facilities in the state, to promote continued improvement of such facilities, to encourage the development of innovative and affordable facilities particularly for persons with low to moderate incomes, to ensure that all agencies of the state cooperate in the protection of such residents, and to ensure that needed economic, social, mental health, health, and leisure services are made available to residents of such facilities through the efforts

> of the Agency for Health Care Administration, the Department of Elderly Affairs, the Department of Children and Family Services, the Department of Health, assisted living facilities, and other community agencies. . . . The Legislature recognizes that assisted living facilities are an important part of the continuum of long-term care in the state. In support of the goal of aging in place, the Legislature further recognizes that assisted living facilities should be operated and regulated as residential environments with supportive services and not as medical or nursing facilities. The services available in these facilities, either directly or through contract or agreement, are intended to help residents remain as independent as possible. Regulations governing these facilities must be sufficiently flexible to allow facilities to adopt policies that enable residents to age in place when resources are available to meet their needs and accommodate their preferences.

Fla. Stat. § 429.01(2).

To the extent § 429.01 describes Florida's public policy, the Defendant's insurance policy does not offend it. Section 429.01 goes no further than establishing that assisted living facilities are welcome in Florida, and that the state will establish a set of guidelines to ensure that those facilities are adequate and desirable to their residents. Nothing in that section declares that the policy issued by the Defendant is illegal, or that Florida law requires that insurers pay for their policyholders' decision to relocate to an assisted living facility.

Florida's public policy is that contracts, including insurance contracts, must be enforced as written. *See, e.g.,* Fla. Stat. § 627.419(1) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefore or any rider or endorsement thereto."). In this case, the Defendant offered the Plaintiff three contracts. Two of those contracts would have covered the expenses for which the Plaintiff seeks reimbursement. But the Plaintiff deliberately chose the least expensive policy—the Home Care Only policy— knowing that the policy she chose would not cover services rendered in an assisted living facility. Indeed, the Plaintiff explained in her own handwriting on the policy's application form that she was choosing the least expensive policy for financial reasons.

Nothing in the policy in question violates Florida's public policy. To the contrary, it would advance Florida's public policy to allow insurers to offer different policies to their prospective customers based on those customers' actual needs and to have a judiciary that enforces those policies so that the insurer is required to provide only the coverage for which the insured actually bargained.

## V. Conclusion

For all of the foregoing reasons, the Plaintiff's motion for summary judgment is denied and the Defendant's motion for summary judgment is granted. The Defendant is not required to provide coverage for any expenses that the Plaintiff incurs while in an assisted living facility, except as specifically required by the policy. The Court will enter final judgment consistent with this order.

DONE in Chambers, Miami, Florida, March 31, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
Counsel of record.